## Ohio Valley Banking & Trust Company v. Nichols.

(Decided April 19, 1917.)

### Appeal from Henderson Circuit Court.

1. Bills and Notes—Denial of Credit Upon Note—Pleading.—A denial of an allegation that credits placed upon appellee's note on a certain date by appellant, out of funds due appellee, were wrongful appropriations of appellee's funds, is a substantial denial that the note had theretofore been paid in full by appellee.

2. Banks and Banking—Introduction of Books to Show Entries.—Appellee having introduced as evidence the books of appellant's assignor, to show entries therein favorable to his contention, cannot object to appellant's use of the same books, to show other entries in reference to the same transactions, which explain and elucidate the entire matter.

3. Banks and Banking—Consideration of Note—Burden of Proof.—An illiterate customer of a bank having signed a note, upon demand of the bank's cashier, protesting that he did not owe the amount thereof, in a suit for an accounting and settlement of accounts between the parties, where the bank had kept all the accounts, without furnishing the customer with any evidence of his deposits, and the evidence showing conclusively that there was a want of consideration as to part of the note at least, and that his name had been attached to many spurious notes by a dishonest cashier, the burden is upon the bank to show the true consideration of the note.

4. Banks and Banking—Accounts—Evidence.—Evidence examined and accounts between the parties audited.

YEAMAN & YEAMAN and MONTGOMERY MERRITT for appellant.

HENSON & TAYLOR and DORSEY & DORSEY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing on original and affirming on cross appeal.

Appellee was a customer of the Planters State Bank, at Henderson, Kentucky, from 1907 until 1913, during which time Ingram Crockett was cashier of the bank. In the summer of 1913, believing that his accounts with the bank were not being regularly kept, Nichols ceased to do business with the bank, and made complaint to the president and three directors that he had been defrauded by Crockett. Upon demand of Crockett, but under protest that he did not owe it, Nichols executed to the bank, a note for $9,656.00, dated June 29, 1913, which is one of the items involved here.

Mr. Nichols was unable to read or write, but could sign his name. During the time he was a customer of the bank, he was engaged quite extensively, in buying and operating farms, his transactions with the bank, from January 1st, 1908, until October 1st, 1913, aggregating nearly $75,000.00. Of this sum that was placed to his credit during that period, approximately one-third was the proceeds of about thirty notes, executed by him to, and discounted by, the bank. During most of this time he had no pass book, and took no receipt from the bank, for deposits made by him, and left with the bank, for safekeeping, all of his valuable papers. He testifies that he had complete confidence in Mr. Crockett's integrity, and trusted and depended upon him to keep his accounts straight, and to keep safely his valuable papers, including notes, contracts, deeds, etc.; that, not being able to read or write, he signed, without question, such papers and notes as Mr. Crockett requested him to sign, until June 29th, 1913, when requested by Crockett to sign the note for $9,656.00; that he signed that note under protest, claiming that he did not owe it, and demanded of the bank officials a statement and examination of his accounts with the bank, covering the period he had been a customer of it. A pass book was, some time thereafter, furnished him, showing his deposits and checks for the period, and the cancelled checks were delivered to him, and some, but not all, of his paid notes were later delivered to his attorneys. He was not satisfied that the statement furnished him was correct, and started an investigation, which resulted, on March 9th, 1914, in the absconding of

Crockett, the cashier, and the discovery that he was a defaulter in a large amount. Crockett was afterwards apprehended, and is now in the Eddyville penitentiary as a result of his defalcations of the funds of the bank and its customers.

In 1914, Nichols filed this action, in the Henderson circuit court, alleging that funds deposited by him in the bank during that period, at various times, had not been placed to his credit, or had been diverted from his account, aggregating the sum of _____ dollars, but that he was unable to state the times or the amounts of the various sums not credited to, or diverted from his account, and prayed judgment against the Planters State Bank for the sum of _____ dollars.

An effort was made to settle the matter out of court, and the blanks in the petition were not filled until the January term, 1916, when they were filled by the insertion of the figures "$25,000.00," and, at the same time, an amended petition was filed, setting up in separate paragraphs, five specific items, for which he asked judgment against the Planters State Bank.

In the meantime, the Planters State Bank, hereinafter called the bank, had been consolidated with the Ohio Valley Banking & Trust Company, hereinafter called appellant, which took over the assets, and assumed the liabilities, of the bank.

After the filing of the amended petition, appellant filed a petition to be made a party defendant, setting up the consolidation of the bank with it, and asking that its petition be taken as an answer to appellee's petition and amended petition, and also setting up therein as a counter-claim against appellee, the note for $9,656.00, above referred to, and another note for $1,500.00, dated August 5th, 1913.

This answer was controverted of record, except that appellee specifically denied that he signed the notes set up in the counter-claim.

The cause was transferred to equity and, by agreement, the evidence was heard orally, taken by the stenographer, to be considered as if taken upon deposition.

During the trial appellee filed a written reply, which was controverted of record, in which he admits signing the note for $9,656.00, but denies that same was for value, and says that at the time he executed and delivered the note he did not owe the bank that or any

other amount, but that the bank, was largely indebted to him, as set out in his petition; that he had not borrowed that, or any other sum that went to make up the note, from the bank; that the note was without consideration and void.

The several items set up in the amended petition are as follows:

First, that a note for $8,550.00, with interest from January 1st, 1914, executed by Tom Baskett to appellee, belonging to him, had been collected, and the proceeds thereof were held by, and in the possession of, the appellant, and neither the bank nor appellant had any claim thereto; second, that on January 4th, 1913, he executed his note to the bank, for $6,500.00, due March 5th, 1913; that on April 21st, 1913, he paid the note in full, and that thereafter on May 27th, 1913, the bank appropriated and diverted from his account the sum of $3,000.00, and applied it to the payment of said note, and that on the same date, by means of a separate transaction, it wrongfully appropriated and diverted from his account, the sum of $3,456.00, and credited it also on the same $6,500.00 note, thereby wrongfully defrauding him of the sum of $6,456.00; third, that on September 12th, 1912, the bank wrongfully appropriated from his funds on deposit, the sum of $200.00, and on September 30th, 1912, the sum of $3,100.00, and applied both of these sums to the payment of a fictitious and spurious note for $3,300.00; fourth, that the bank wrongfully appropriated from his funds on deposit, on March 1st, 1911, $200.00, July 19th, 1911, $200.00, and August 14th, 1911, $100.00, and applied same to the payment of a fictitious and spurious note for $2,990.00; and fifth, that in May or June, 1913, Tom Baskett directed Crockett, the cashier of the bank, to place to appellee's credit, the sum of $6,700.00, the proceeds of the sale of certain shares of Tippecanoe Insurance Company stock, sold by Crockett for Baskett, but that appellee only received credit for $2,294.75, $560.00 and $2,200.00, leaving a balance due appellee of $1,645.00.

The lower court gave judgment for appellee, against appellant, on the first item above, for $8,550.00, with interest from May 27th, 1913; second, gave judgment for appellant, for the second item above; third for appellee and against appellant, for the $200.00 and $3,100.00, with interest, on both sums in the third item; fourth,

for appellant, for the three items of $200.00, $200.00 and $100.00 set up in the fourth paragraph above; for appellee and against appellant, for $645.25, with interest, on account of the proceeds of the sale of the Tippecanoe Insurance Company stock, claimed in the fifth paragraph; and sixth, upon appellant's counter-claim, the court gave judgment in favor of appellee, except as to $1,500.00, with interest from June 9th, 1913, for which it gave judgment for appellant, and appellant was given judgment on the $1,500.00 note, with interest from August 5th, 1913, the net result of which is a judgment for appellee against appellant, for $9,495.25, with interest.

From that judgment appellant has appealed, admitting, however, that the *items* of $200.00 and $3,100.00, in the third paragraph of the judgment are proper claims against it. Appellee has prosecuted a cross-appeal from so much of the judgment as was adverse to him.

Before taking up and discussing these several items, we shall dispose of two contentions of appellee, both of which are untenable.

1. Appellee, in the second paragraph of his amended petition, admitting that he executed the $6,500.00 note, dated January 4th, 1913, alleges that he paid the note on April 21st, 1913; that thereafter, on May 27th, 1913, the bank appropriated and credited to this same note the sums of $3,000.00 and $3,456.00, from his funds. In its answer, appellant did not in terms deny payment of the note, on April 21st, but did deny that it wrongfully diverted from appellee's account, the sum of $3,000.00, or $3,456.00, or any sum, for credit upon that note. Counsel for appellee insists that, since appellant did not specifically deny that the note for $6,500.00 was paid on April 21st, 1913, the only question raised is, whether or not the bank wrongfully appropriated or diverted from the funds of appellee either of these amounts, when, on May 27th, 1913, they were credited on the $6,500.00 note, and that upon this state of the pleadings, it is not permissible to inquire whether or not, in fact, the $6,500.00 note was paid off on April 21st.; but this position is clearly erroneous, because, as admitted by counsel for appellee, the question raised by the pleadings is, whether or not appellee's funds were wrongfully diverted, in the two credits of May 27th, 1913, upon the $6,500.00 note. They, manifestly, were not wrong-

fully diverted, if the note had not theretofore been paid off by appellee, since he admits its validity. To determine whether or not the credit of these sums upon that note, of May 27th, 1913, from the funds of appellee, was wrongful or not, and this is the question put in issue by the pleadings, necessitates a determination of whether or not it had theretofore been paid.

2. The other preliminary question raised by counsel for appellee is, that his motion to strike out certain portions of the evidence of Mr. B. G. Witt, which motion was overruled by the trial court, should have been sustained. Mr. Witt is the president of appellant, and was placed upon the stand as a witness for appellee, to prove facts shown by the books of the bank, which were then in the control and custody of appellant. For appellee, he testified to such entries upon these books as, without regard to who made the entries, supported appellee's contention with reference to the items involved in this action. Mr. Witt was not connected with the Planters State Bank during the time of any of the transactions involved and, as testified, had no personal knowledge of any of the facts about which he was testifying. After he had testified for appellee, counsel for appellant, upon cross-examination, asked him, and he testified, about other entries in the same books, and affecting and explaining the entries and items about which appellee had had him to testify, and upon re-examination, counsel for appellee interrogated him, again, with reference to many of the items about which he had theretofore testified. After taking of testimony had been completed, appellee filed a motion to strike out all of the evidence favorable to appellant given by Mr. Witt upon cross-examination, and re-examination, upon the ground that it was incompetent, and the argument is made, that this evidence is incompetent because of the fact that Mr. Witt had not made the entries in the books, about which he testified.

Appellee would use the entries in these books, none of which was made by Mr. Witt, to make out his case, and without which he did not make out a case upon any of the items, and then he would deny to appellant the right to use such entries as affected and explained those upon which he relies; he would, in effect, use the books of the defunct bank, because it is, in fact, the books and not Mr. Witt, that are testifying, to prove his conten-

tions, and deny to his opponent the use of other entries in the same books, fully explaining and elucidating the facts.  Having introduced the books, he would show a part of a transaction, and then close the books as to the other parts of the same transaction.

No such rule of evidence has ever been recognized anywhere, and, having introduced the books through Mr. Witt, who was simply the custodian and made none of the entries therein, he cannot object to the use of the same books by the other side, upon the ground that the witness did not make the entries therein.  This proposition is too plain to need citation of authorities.

3.  We will now consider the evidence with reference to the five items set up by appellee in his amended petition, and the two items set up against appellee by appellant in his counter-claim, to which the controversy had narrowed upon the evidence.

(a)  The first item of appellee's claim is $8,550.00 with interest from January 1, 1913, the proceeds of a note given by Tom Baskett to appellee, collected by the bank.  The evidence shows that this note was the property of appellee, and that the bank collected it on May 27, 1913; that it credited $560.00 thereof to the account of appellee, $3,000.00 upon his note for $6,500.00, of date January 4, 1913, and due March 5, 1913, which appellee admits he had owed to the bank, but claimed he had paid in full on April 21, 1913.  The evidence does not show this payment, as claimed, on April 21, 1913, as we will more fully set forth hereafter in the opinion; and appellant should have been credited with the $3,000.00.  The balance of the $8,550.00 note collected by the bank on March 27, 1913, was wrongfully applied by Crockett to the payment of three notes, for which Nichols was not liable, as follows:  upon the Huggins note, $2,990.00; the Vaso Company note, $1,500.00, and Vaso Company note, $500.00, making a total of $4,990.00 that was misappropriated out of the Baskett note for $8,550.00; and for this sum appellee was entitled to a judgment upon the first paragraph of his amended petition, whereas the lower court gave him judgment for the full amount of the Baskett note.  The error of the lower court, in so far as the $560.00 item was concerned, is immaterial, since it is offset by an erroneous credit to the bank, of this sum, out of the proceeds of the Tippecanoe Insurance Company stock, it being conclusively shown by the evi-

dence, that the $560.00 was a part of the Baskett note, and not of the Tippecanoe Insurance Company stock.

(b)   The second paragraph of appellee's amended petition involves the $6,500.00 note, due March 5, 1913, which appellee contends he has paid twice, and, although the lower court did not render judgment in his favor, for that amount, it did that, in effect, by refusing to allow the bank credit for the $3,000.00 that was credited upon this note out of the proceeds of the Baskett note, above referred to, and by refusing to appellant judgment for the $3,456.00, which was a part of this $6,500.00 note, included in the note for $9,656.00, dated June 29, 1913, set up in appellant's counter-claim; and we shall now consider whether or not, in fact, this note was paid twice out of appellee's funds.

Appellee had sold to Tom Baskett some land located in Indiana, for a cash consideration and Baskett's written agreement to pay $14,250.00.   This written contract was left by Nichols in the bank.   On April 21, 1913, Crockett had used it as a basis for several entries upon the bank's books, none of which represented real transactions.   That this is true cannot be doubted, because of the fact that upon that date the bank did not acquire that contract, nor did it then collect any part of same from Baskett, although certain entries upon the books of the bank would indicate that it was upon that day discounted by Nichols to it, and that of the proceeds thereof $6,500.00 was used in discharge of appellee's $6,500.00 note, above referred to.   That this obligation, executed by Baskett, for $14,250.00 was not, in fact, acquired by the bank or paid by Baskett on April the 21st, is rendered absolutely certain by the evidence that on May 27, 1913, but little over a month thereafter, Baskett settled this written contract by turning over to the bank, for appellee's credit, the $8,550.00 note referred to above, and the proceeds of the sale of the Tippecanoe Insurance Company stock, amounting to $5,700.00, which totals $14,250.00, the exact amount of Baskett's written obligation to Nichols.   Appellee could not, out of that written obligation for $14,-250.00, have paid the $6,500.00 note on April 21st, which he admits he owed to the bank, and have been entitled to credit for the full amount thereof on May 27, and yet this is what the lower court, in effect, held, when it found that the $6,500.00 note was paid on April 21, 1913, out of the proceeds of the Baskett contract, which was neither discounted by appellee to the bank nor paid to it by Bas-

kett upon that day, although spurious entries made by Crockett upon the bank's books indicate that such was the fact. What purpose Crockett had in making these entries is not explained in the evidence, but that they were spurious entries from which appellee ought neither be prejudiced nor benefited there can be no doubt, because, on May 27, 1913, this obligation was, in fact, settled by Baskett, and appellee is given full credit for all of same elsewhere in the judgment.

(c) Appellee asks judgment for two sums wrongfully diverted from his account, as credits upon a spurious note for $3,300.00, viz., $200.00, of date September 12, 1912, and $3,100.00, upon September 30, 1912, which were sustained by the evidence and admitted by counsel for appellant, and for which the lower court gave judgment against appellant.

(d) In the fourth paragraph of the amended petition, appellee asked judgment for $200.00, of date March 1, 1911; $200.00, of date July 19, 1911, and $100.00, of date August 4, 1911, applied to the payment of a fictitious note for $2,990.00. The evidence fails to show that this note was an obligation against appellee, and it also fails to show that either of the three sums named above, which are indorsed as credits upon this note, were paid by appellee, or charged to his account with the bank. The evidence having shown that this note was not appellee's, he is not chargeable therewith, neither is he entitled to credits indorsed thereon, simply because of such indorsements, in the absence of any evidence to show that he had any more to do with the credits upon the note than with its execution. The lower court properly, therefore, denied credit to appellee for these items.

(e) In the fifth paragraph of the amended petition, appellee asked judgment for $6,700.00, the proceeds of the sale of certain shares of Tippecanoe Insurance Company stock, less credit for $2,294.75, $560.00 and $2,200.00, that had been placed to his credit in the bank. The evidence shows that the amount realized from the sale of this stock was $5,627.00, but that Crockett, in the settlement between Baskett and appellee, represented to them, that $5,700.00 was realized from the sale of the stock, and upon that representation appellee gave to Baskett credit for that amount. We, therefore, conclude that the bank is liable to appellee for that amount, and the evidence shows that of this sum there was credited to appellee's account the sum of $2,294.75, on May 22, 1913,

and $2,200.00, on June 28, 1913, and that there was credited upon a note for $5,100.00, ostensibly executed by appellee, as out of the proceeds of this stock, a total of $2,490.00; but the evidence does not show that this note. was a valid obligation against Nichols, and, as the bank received the $5,700.00, for Nichols' credit, the burden was upon it to prove that that part of same alleged to have been credited upon the note was placed upon a note that he, in fact, owed to it. The evidence shows that this $5,100.00 note was a renewal of two notes, one for $2,000.00, and the other, the balance of the $3,300.00 note referred to in the third paragraph of the amended petition, after payment of $200.00 thereon; but, as above set out in sub-division "c," this $3,300.00 note was not a valid claim against appellee, and the evidence shows further, that the $2,000.00 note, which made up the balance of the $5,100.00 note, was possibly the note which Crockett satisfied by his check for that amount, made payable to "note," without specifying what note, and we do not think that appellee should be charged with any of the credits on this $5,100.00 note, as there is some doubt, at least, from the evidence, of its genuineness, and we feel that appellee is entitled to have every doubt arising from the manner in which the affairs of the bank were conducted resolved in his favor. He, therefore, was entitled, upon this item, to have credit for the $5,700.00 produced by the sale of the Tippecanoe Insurance Company stock, less the two sums that were placed to his credit.

(f) We come now to appellant's counter-claim, the first item of which is the note for $9,656.00, dated June 29, 1913, which, the evidence shows, appellee signed under protest, claiming that he did not owe it. Taking into consideration the fact that appellee, when he signed this note, protested that he did not owe it; that he was illiterate and had placed implicit confidence in the bank and its cashier, in the handling of his accounts and the management of his affairs, it would, it seems to us, be extremely inequitable, in this action, which is, in fact, and was so considered by the lower court, a final settlement of all his affairs with the bank, to place upon him the burden of proving the want of consideration for the note. Justice and equity demand, rather, under the circumstances, that the bank, which was entrusted with the duty of keeping the accounts between the parties, should be required to prove the justice of the claim, especially in

view of the fact that Crockett, its cashier, after having procured appellee's signature to the note, over his protest, upon the same day placed a credit upon the note of $3,000.00, and gave a check in payment thereof. This is evidence conclusive, that appellee did not owe the bank the amount of the note, and that there was at least $3,000.00 included in it that was not his debt. Under these circumstances, appellee ought not in good conscience be charged with any part of the note, except such part thereof as the evidence shows he justly owed. He admits in his testimony, that there was included in this note a note for $1,500.00 that he had executed to and owed the bank, and the evidence further shows conclusively, that there was carried into this note an unpaid balance of $3,456.00 upon the note for $6,500.00, due March 5, 1913, referred to under sub-section "b." As to the balance of this note, there is no evidence showing an indebtedness against appellee, and he should have been charged on account thereof, with the sums of $1,500.00 and $3,456.00, making $4,956.00.

(g) Appellee admits in his testimony, that he executed, and owes, the note for $1,500.00, dated August 5, 1913, and due six months thereafter, set up in appellant's counter-claim.

Summarizing the above, we find that, upon the items in dispute, appellant should be charged and credited with the following:

Debits:—

| | | |
|---|---|---|
| Sept. 12, 1912. Misappropriation | $ | 200.00 |
| Sept. 30, 1912. Misappropriation | | 3,100.00 |
| May 27, 1913. Tippecanoe Ins. Company stock | | 5,700.00 |
| January 1, 1913. Baskett note | | 8,550.00 |
| Total | | $17,550.00 |

Credits:—

| | | |
|---|---|---|
| March 5, 1913. On Nichols' note for $6,500.00 | | $3,000.00 |
| May 22, 1913. Tippecanoe stock | | 2,294.75 |
| May 27, 1913. Part Baskett note | | 560.00 |
| June 28, 1913. Tippecanoe stock | | 2,200.00 |
| June 29, 1913. Nichols note | | 4,956.00 |
| August 5, 1913. Nichols note | | 1,500.00 |
| Total credits | | $14,510.75 |
| Balance due Nichols | | $ 3,039.25 |

and interest to be adjusted on the various items.

For reasons indicated, the judgment is reversed on the original appeal and affirmed on the cross appeal, with directions to enter a judgment in conformity with this opinion.